**SO ORDERED.**

**SIGNED this 18 day of September, 2009.**

_____
**Randy D. Doub
United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
FAYETTEVILLE DIVISION**

| | |
|---|---|
| **IN RE:** | **CASE NO.** |
| **RALPH A. BARBOUR** | **09-00553-8-RDD** |
| **DEBTOR** | **CHAPTER 7** |

**ORDER CONDITIONALLY GRANTING MOTION TO DISMISS
CHAPTER 7 PROCEEDING PURSUANT TO 11 U.S.C. § 707(b)(1) OR (b)(3)**

Pending before the Court is the Motion to Dismiss Chapter 7 Proceeding Pursuant to 11 U.S.C. § 707(b)(1) or (b)(3) filed on April 14, 2009 (the "Motion to Dismiss") by the Bankruptcy Administrator and the Response to Motion to Dismiss filed on April 21, 2009 (the "Response") by Ralph A. Barbour (the "Debtor"). A hearing was conducted in Fayetteville, North Carolina on August 6, 2009.

The Debtor filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") on January 26, 2009. On March 18, 2009, the Debtor filed his Amended Chapter 7 Statement of Current Monthly Income and Means Test Calculation (the "Amended CMI Statement") which determined that he was an above-median debtor but that based on the calculation of his current monthly income, the presumption of abuse did not arise.

After review of certain documents, the Bankruptcy Administrator requested the Clerk of the Court to issue a notice of presumed abuse. The Statement of Presumed Abuse was timely docketed on March 17, 2009. The Bankruptcy Administrator subsequently filed the Motion to Dismiss pending before the Court.

Pursuant to his Motion to Dismiss, the Bankruptcy Administrator asserts that the Debtor understated his current monthly income, as defined by the Bankruptcy Code, and overstated his tax expenses in calculating his disposable income under the means test. By doing so, the Bankruptcy Administrator maintains that the Debtor manipulated the means test in a fashion that resulted in the Debtor showing that he had no disposable monthly income available for his distribution to creditors. As such, the Bankruptcy Administrator asserts that the Debtor, in fact, has disposable monthly income and, therefore, disputes the Debtor's assertion that the presumption of abuse does not arise in this case.

The Bankruptcy Administrator further argues that when taken as a whole, even if the presumption of abuse does not arise, this case should be dismissed based on the totality of the circumstances of the Debtor's financial situation. The Debtor disputes that he has any disposable monthly income based on the means test and that the Motion to Dismiss should be denied.

The Bankruptcy Administrator asserts that this case should be dismissed pursuant to either section 707(b)(1) or 707(b)(3) of the Bankruptcy Code based on the Debtor's abuse of the provisions of chapter 7.

Section 707(b)(1) provides that the Court may dismiss a case under chapter 7 or, with the consent of the debtor, convert a case to chapter 11 or 13, should the court determine that granting relief would be an abuse of the provisions of chapter 7. To determine whether granting relief would

be an abuse, a court should presume an abuse if the debtors current monthly income reduced by certain amounts and multiplied by 60 is not less than the lesser of 25 percent of the debtor's nonpriority unsecured claims, or $6,575, whichever is greater; or $10,950. Section 707(b)(1)(A)(i).

In addition to the court's ability to find abuse under section 707(b)(1), even if a presumption of abuse does not arise or is rebutted by a debtor, the court has the authority to dismiss a case under section 707(b)(3).

Section 707(b)(3) provides:

In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in which subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider –

    (A) whether the debtor filed the petition in bad faith; or

    (B) the totality of the circumstances of the debtor's financial situation demonstrates abuse.

BAPCPA includes the judicially created totality of the circumstances test in section 707(b)(3). *In re Hartwick*, 359 B.R. 16, 20 (Bankr. D.N.H. 2007); *see also* Eugene R. Wedoff, *Means Testing in the New § 707(b)*, 79 AM. BANKR. L.J. 231, 236 (2005)(reading § 707(b)(3) to allow judicial determination of debt paying ability). The changes in BAPCPA lowered the standard for a court to find abuse. Pre-BACPCPA, a court was required to make a finding of "substantial abuse" of the provisions of the chapter 7. However, BAPCPA specifically lowers the standard to simply "abuse." *In re Lipford*, 397 B.R. 320, 339 (Bankr. M.D.N.C. 2008).

The Debtor disputes that he miscalculated his current monthly income. Furthermore, the Debtor states that the tax expenses he used to calculate his disposable income under the means test

3

are those amounts which the federal, state, and local governments withheld from his salary.  He testified that he believed the election of one exemption is appropriate for a single individual with no dependents.  The Debtor argues that based on his calculations, he satisfies the means test, does not have any disposable monthly income, and meets the standards such that the presumption of abuse does not apply.  Therefore, the Debtor requests that the Motion to Dismiss be denied.

Since the Bankruptcy Administrator raises issues with the Debtor's current monthly income and the calculation of the Debtor's monthly expenses, the Court shall address each individually.

**I.    Current Monthly Income**

The Bankruptcy Administrator asserts that the Debtor has not properly calculated his current monthly income as required by the Bankruptcy Code.  Current monthly income ("CMI") is defined as the average monthly income from all sources that the debtor receives...without regard to whether such income is taxable income, derived during the 6-month period ending on the last day of the calendar month preceding the petition date if the debtor files a schedule of current income and expenditures (commonly known as Schedules I and J) and any amounts paid to the debtor on a regular basis for the household expenses of the debtor or the debtor's dependents, subject to certain limitations. 11 U.S.C. § 101(10A).  Since the Debtor filed his petition on January 26, 2009, the Debtor should average his monthly income from July 1, 2008 through December 31, 2008 (the "CMI Period") to calculate his CMI.

Based on an analysis of the documents provided by the Debtor, the Bankruptcy Administrator asserts that the CMI of the Debtor was $6,823.00 during the CMI Period.

The Debtor disputes the Bankruptcy Administrator's calculation and claims that his CMI was $5,991.44, as reflected on the Amended CMI Statement.  The Debtor argues that the Bankruptcy

4

Administrator does not properly calculate his CMI since the Debtor is no longer working overtime and no longer has as many overtime opportunities available to him. Since those opportunities no longer exist, the Debtor believes that the overtime wages he earned during the CMI Period should not be considered in calculating his CMI.

At the hearing, the Bankruptcy Administrator introduced into evidence the Debtor's pay advices from DuPont for the period of August 16, 2008 through March 15, 2009.[1] In addition, the Bankruptcy Administrator provided the Court copies of the payroll advices from the Debtor's part-time employer, CVS - Revco Discount Drug Center ("CVS"), for the period of October 4, 2008 through March 14, 2009. The Debtor testified that he started working part-time at CVS in October 2008.

Since the Bankruptcy Administrator did not have all of the payroll advices from the CMI Period, his office reviewed copies of the bank statements provided by the Debtor to locate any deposits from DuPont during the CMI Period. At the hearing, the Bankruptcy Administrator elicited testimony from the Debtor regarding certain deposits into the Debtor's bank account from DuPont in July 2008 and August 2008. The Debtor testified that funds from DuPont, his full-time employer, were deposited into his checking account on July 3, 2008; July 15, 2008; July 18, 2008; July 31, 2008; July 31, 2008; August 15, 2008; and August 22, 2008. He stated that these amounts represented his regular bi-monthly net deposits and net deposits representing overtime hours from DuPont.

---

[1] The Debtor and counsel indicated that they provided the Bankruptcy Administrator all of the necessary payroll advices for the relevant CMI Period. Furthermore, they asserted that Michael Peavey, the Chapter 7 Trustee, also had a complete copy of the Debtor's payroll advices. The Bankruptcy Administrator disputed that his office received all of the payroll advices for the CMI Period.

By using the deposits from DuPont shown on the bank statements, the Bankruptcy Administrator's office was able to approximate the Debtor's gross income for the six week period during the CMI Period even though he did not have the corresponding payroll advices. Rick Hinson, an analyst with the Bankruptcy Administrator's office, testified that he calculated the approximate gross amounts of these deposits based on the withholding amount shown on the payroll advices provided by the Debtor. Mr. Hinson testified that the net deposits resulted after approximately twenty-nine (29%) was withheld from the Debtor's gross wages. He stated that he believed this estimate was accurate as the Debtor testified that he had made no changes in his withholding or exemption status during the CMI Period and that twenty-nine (29%) was consistent with the amounts withheld on the payroll advices from August 15, 2008 through December 31, 2008.

The Debtor failed to present any evidence to dispute the accuracy of Mr. Hinson's calculations. In fact, the Debtor admitted that the deposits shown on his bank statements were made by DuPont for the payment of wages, either hourly or overtime, during the CMI Period.

Therefore, the Court finds that determining the percentage of the debtor's withholding based on dividing the debtor's gross wages by a debtor's net wages for the same period is an appropriate method of determining the debtor's average withholding percentage should the debtor fail to timely provide all of the necessary payroll advices during the CMI period. In this case, the resulting percentage (29%) shall be used to calculate the Debtor's gross wages for the period of July 1, 2008 through August 15, 2008 based on the net deposits made by DuPont during that time frame.

Mr. Hinson testified that based on his calculations, the Debtor's CMI would be $6,823.00 a month. This amount includes wages in the amount of $6,023.00, as well as an $800.00 contribution from his girlfriend for household living expenses.

The Debtor believes this approach is improper since it takes into account overtime hours the Debtor no longer has available. The Debtor argues that his present situation should be considered in calculating CMI and alleges that the Court should consider his actual earning capacity as of the filing date. The Debtor's position is incorrect. Based on the definition of current monthly income as set forth in Section 101(10A) of the Bankruptcy Code, which defines CMI, *all* sources of income that he receives during that six month period are included in the calculation of CMI. (emphasis added).

Therefore, based on Mr. Hinson's testimony and the evidence presented, the Court finds that the Debtor's CMI for the period of July 1, 2008 through December 31, 2008 is $6,823.00. Line 12 of the Amended CMI Statement filed by the Debtor is inaccurate.

**II.    Line 25 Taxes - Other Necessary Expenses**

Line 25 of the Amended CMI Statement lists the Debtor's average monthly tax expenses as $1,489.00. Counsel for the Debtor asserts that the amount listed on Line 25 was calculated based on the amounts withheld from the Debtor's gross wages during the CMI Period. The Bankruptcy Administrator objects to the Debtor's calculation of the tax withholding amounts as an expense on Line 25.

Line 25 provides that an expense which is allowed as a tax expense is "the total average monthly expenses that you *actually* incur for all federal, state, and local taxes..." *See* Official Form 22A. (emphasis added).

Courts have recognized the inherent difficulty in calculating the actual tax expense required for Line 25. Significant efforts and expense might be required to calculate the proper amount. *In re Lipford*, 397 B.R. 320, 334 (Bankr. M.D.N.C. 2008). However, courts also recognize that a

debtor's actual withheld tax during the CMI period is not necessarily an appropriate method for determining the expense allowed for Line 25. *Id*. at 332-4. In *Lipford*, Judge Waldrep noted that there is an inherent lack of reliability of withholdings and, in fact, a debtor could over-withhold taxes from his gross income, thereby allowing for an expense on Line 25 that could later result in a refund by the Internal Revenue Service. *Id.* at 334. *(*citing *In re Bishop,* No. 07-50432, slip op. 9-10 (Bankr. E.D.Ky. Sept. 17, 2007)(2007 Bankr.LEXIS 3096)). Consequently, courts have struggled to find a method that would not overly burden the debtor to calculate an accurate amount of the actual taxes paid during the CMI period.

The Internal Revenue Code (the "IRC") provides that persons are required to have accurate amounts withheld from gross wages. 26 U.S.C. §§ 3401-3406. *Lipford*, 397 B.R. at 334. However, many taxpayers have underwithheld, overwithheld, or had unusual circumstances that allowed them to take increased or decreased deductions which could impact the taxpayers' ultimate tax liability. The end of year reconciliation occurs with the completion of the tax return. *Id.*

The Debtor testified that his withholdings were calculated based on one exemption and, that to his knowledge, he was entitled to claim a personal exemption for himself on his tax returns. The Court does not question the Debtor's ability to qualify for one exemption when calculating his federal taxes but notes that during the three years prior to the filing of this case, the Debtor received a federal tax refund in excess of $5,000 each year. More specifically, the Bankruptcy Administrator introduced copies of the Debtor's tax returns for 2006, 2007, and 2008. In 2006, the Debtor received a federal tax refund in the amount of $5,728.00; in 2007, the Debtor received $10,512.00;[2] and, in 2008, the Debtor received a federal tax refund on 5,754.37. In addition, the Debtor received a

---

[2]The Debtor testified that since the filing of the bankruptcy case he has been notified of an audit by the Internal Revenue Service and repayment of approximately $5,300.00 has been requested for the 2007 tax year.

8

refund from the State of North Carolina in 2008 for $1,433.00. Even though the Debtor may qualify to withhold monies in connection with a certain number of exemptions, historically, for this Debtor, that amount does not accurately reflect the amount of tax he actually incurred during those years.

The question remains how should Line 25 be calculated. In *In re Lipford*, the Bankruptcy Court in the Middle District of North Carolina set forth a logical solution to what could be a complicated issue. 397 B.R. at 334. After considering the extreme of allowing a debtor to utilize his withholding amounts and requiring a debtor to prepare tax documents, Judge Waldrep determined that where the six-month period occurs during which a period for which federal and state tax returns were prepared and filed, a debtor should use the tax rates indicated on those returns. *Id*. The *Lipford* Court recognized that a debtor should remove from the prior year's return actual changes such as charitable deductions, non-reoccurring income changes, and make other adjustments demonstrable by a debtor. *Id.* at 334. *See also In re Bernard,* 397 B.R. 605 (Bankr. D. Mass. 2008); *In re Stimac*, 366 B.R. 889 (Bankr. E.D.Wis. 2007).

The CMI Period in this case fits the first of Judge Waldrep's scenarios. With respect to the amount of tax withheld, Mr. Hinson testified that he calculated the actual amount withheld for taxes by adding those amounts shown on the payroll advices for the period of August 16, 2008 through December 31, 2008. In order to calculate that actual amounts withheld for July 1, 2008 through August 15, 2008 for which the Bankruptcy Administrator did not have the necessary payroll advices, Mr. Hinson testified that reviewing the payroll advices provided by the Debtor for the other months, he was able to calculate the withholding percentage from the DuPont deposits made between July 1, 2008 and August 15, 2008. Based on his calculations, twenty-nine percent (29%) of the Debtor's gross income was withheld for tax purposes. With these figures, the Bankruptcy Administrator was

able to calculate the total tax withholdings during the CMI Period and then divide such amount by six for the average actual monthly withholding.

However, in order to complete the calculation of an actual tax expense for Line 25, Mr. Hinson also considered whether the Debtor received a tax refund for 2008 since the six month CMI Period fell during the same year. The Debtor testified that he received a tax refund in the amounts of $5,963.00 from the Internal Revenue Service and a refund in the amount of $1,433.00 from the State of North Carolina resulting in a total 2008 refund of $7,396.00. If spread over the entire year, those refunds result in an average monthly refund amount of $616.33.

Determining the appropriate tax rate can also be accomplished by subtracting one-twelfth of the previous years tax refunds from the average monthly taxes withheld. Mr. Barbour's overwithholding of taxes skews the computation of CMI if tax refunds are not considered. Line 25 requires expenses *actually* incurred by a debtor for all federal, state, and local taxes. Use of the previous years tax refund to compute actual tax expense is further corroborated by the fact that Mr. Barbour received significant tax refunds in 2006 and 2007. In addition, Mr. Barbour's wages during the CMI period are similar in amount as his previous years income.[3]

With these amounts, the Bankruptcy Administrator established that the actual monthly tax expense for Line 25 should be $1,215.00 during the CMI Period - being computed by deducting the monthly amount of the 2008 tax refunds from the average monthly amount of $1,831.00 withheld by his employers . The Court agrees with the Bankruptcy Administrator's reliance on the standards

---

[3] Based on the tax documents submitted to the Court, Mr. Barbour's 2006 gross income was $66,775.00; his 2007 gross income was $71,107.00; and his 2008 gross income was $75,367.00 as compared to the 2009 projected gross income of $81,876.00. The Debtor's gross income - as calculated based on the means test requirements - includes an $800.00 a month payment, $9,600.00 annually, that he receives from his girlfriend to assist with the monthly household expenses. This contribution may not be taxable under the Internal Revenue Code and therefore, was not considered as part of his gross income in 2008 accounting for the slightly higher increase in income from 2008 to 2009.

for determining a debtor's actual tax liability as set forth in *Lipford* and finds that the Debtor's monthly actual tax expense is $1,215.00. Therefore, Line 25 of the Amended CMI Statement is inaccurate.

### III.  Additional Expenses

The Debtor disputes that his Line 25 actual tax expense during the CMI Period was $1,215.00. He testified that he may be required to pay a portion of the 2007 tax refund back to the IRS based upon its disallowance of certain medical deductions. At the hearing, the Bankruptcy Administrator conceded that the Debtor should be allowed a $100.00 monthly priority expense for Line 44, not Line 25, related to his tax repayment obligations to the IRS and/or the State of North Carolina.

Furthermore, the Debtor testified that even though he may have received a tax refund, those funds were used to pay his personal and real property taxes to Cumberland County and the City of Fayetteville since his mortgage does not require the payment of the real property taxes into escrow. The Debtor testified that he pays $3,200.00 a year in real estate taxes to the City of Fayetteville and County of Cumberland. Counsel argued that this expense is necessary for the Debtor to maintain his real property and that this amount, divided by 12, should be a credited as an expense on the Amended CMI Statement. Although, there is no specific line item on Form 22A for real property taxes, the Court recognizes though that most lenders require an escrow payment for taxes and, therefore, those tax amounts paid by the Debtor may be considered as part of the monthly mortgage expense incurred by the Debtor on Line 42.

The Bankruptcy Administrator did not object to the allowance of the property tax expense on Line 42. However, the Bankruptcy Administrator stated that the Debtor did not inform him that

the property taxes were not included as part of the mortgage payment. Consequently, the Bankruptcy Administrator had no way of knowing that the debtor included that amount in his Line 25 expense on the Amended CMI Statement. Therefore, based on the evidence presented, the Court finds that Line 42 should reflect a credit of $267.00 representing one-twelfth of the Debtor's real property tax liability.

**IV.   Abuse of Chapter 7**

Taking the findings addressed above into consideration, the Debtor's CMI is $6,823.00 and the total of the allowed deductions is $6,576.72. By subtracting the allowed deductions from the CMI, the Court determines that the Debtor's monthly disposable income is $246.28 and his 60-month disposable income is $14,776.80. Therefore, the Court finds a presumption of abuse pursuant to Section 707(b)(1) since the Debtor's 60-month disposable income exceeds $10,950.00.[4] The Court further finds that the granting of relief would be an abuse of under chapter 7 since no relevant additional facts or evidence was presented to overcome the presumption beyond those matters addressed as part of this order. Therefore, pursuant to section 707(b)(1), the Bankruptcy Administrator's Motion to Dismiss is **GRANTED**.

However, the Debtor is afforded the opportunity to consider converting this case to chapter 13. The Debtor has ten (10) days from the entry of this Order to file a Motion to Convert this case

---

[4] Since a presumption of abuse has been established under Section 707(b)(1) and the Debtor has failed to rebut that presumption, the Court declines to consider whether the facts of this case represent abuse under Section 707(b)(3).

12

to a case under chapter 13 of the Bankruptcy Code. If the Debtor fails to do so, the case shall be dismissed as an abuse under Section 707(b)(1) of the Bankruptcy Code.

**SO ORDERED**.

**END OF DOCUMENT**